

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

*TFH*

| | | | |
|---|---|---|---|
| *Brittany Appleby-Rumon* | *Mailing Address:* | *Office Location:* | *DIRECT: 301-344-0864* |
| *Special Assistant United States Attorney* | *6500 Cherrywood Lane, Suite 200* | *6406 Ivy Lane, 8ᵗʰ Floor* | *MAIN: 301-344-4433* |
| *Brittany.Appleby-Rumon@usdoj.gov* | *Greenbelt, MD 20770-1249* | *Greenbelt, MD 20770-1249* | *FAX: 301-344-4516* |

July 28, 2025

***via ECF***

The Honorable Chief Judge George L. Russell, III
United States District Court
District of Maryland
101 West Lombard Street
Baltimore, MD 21201

> Re:    United States v. Tristyn Tutt,
>         Criminal No. GLR-23-236

Dear Chief Judge Russell:

In light of the Defendant's decision to plead guilty in this case without the benefit of a plea agreement, this letter sets forth, as applicable, the minimum and maximum statutory penalties of incarceration, fines, and terms of supervised release for the offenses to which the Defendant seeks to plead guilty. It also addresses several matters the United States Attorney's Office for the District of Maryland ("this Office") submits will be relevant to the Court's Rule 11 colloquy.

Offenses of Conviction

1.      This Office understands that the Defendant will plead guilty to Count One and Count Two of the Indictment, which charge the Defendant with Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count One), and Illegal Possession of Machinegun, in violation of 18 U.S.C. § 922(o) (Count Two). This Office understands that the Defendant intends to admit that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

Elements of the Offenses

2.      The elements of the offenses to which the Defendant will plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland:

a.  Count One (Felon in Possession of Ammunition): (1) the Defendant knowingly possessed ammunition; (2) at the time of the charged act, the Defendant had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year; (3) at the time of the charged act, the Defendant knew that he had previously been convicted of such an offense; and (4) the possession charged was in or affecting interstate or foreign commerce.

b.  Count Two (Illegal Possession of Machinegun): (1) the Defendant knowingly possessed a machinegun; and (2) the Defendant knew, or was aware of, the essential characteristics of the firearm that made it a "machinegun" as defined by 18 U.S.C. § 921(a)(24) and 26 U.S.C. § 5845(b).

Penalties

3.  The maximum penalties provided by statute for the offenses to which the Defendant intends to plead guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 922(g)(1) | N/A | 15 years | 3 years | $250,000 | $100 |
| 2 | 18 U.S.C. § 922(o) | N/A | 10 years | 3 years | $250,000 | $100 |

a.  Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.  Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.  Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. § § 3663, § 3663A, and 3664.

d.  Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.  Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.  Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the

2

United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4.      This Office submits that, by entering a guilty plea, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, this Office would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine this Office's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of the evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      This Office submits that, by pleading guilty, the Defendant will be giving up all of these rights. By pleading guilty, the Defendant should understand that the Defendant may have to answer the Court's questions both about the rights being give up and about the facts of the

case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

   g.    If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

   h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Factual and Advisory Guidelines Submission</u>

   5.    This Office submits that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

   6.    Below are this Office's preliminary United States Sentencing Guidelines ("U.S.S.G.") calculations. Given that there is no plea agreement in this case, there also is no agreement as to the applicable offense levels or criminal history category. The offense levels set forth below are intended only to assist the Court at the Rule 11 proceeding, and do not bind this Office in any way. This Office may argue in favor of a different offense level at sentencing.

*Count One (Felon in Possession of Ammunition)*

   a.   The applicable base offense level is **20**, pursuant to U.S.S.G. § 2K2.1(a)(4)(B), because the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine and the Defendant was a prohibited person at the time the Defendant committed the instant offense.

*Count Two (Illegal Possession of Machinegun)*

   a.    The applicable base offense level is **18**, pursuant to U.S.S.G. § 2K2.1(a)(5), because the offense involved a firearm described in 26 U.S.C. § 5845(a).

4

*Grouping*

b.        Count One and Count Two group, pursuant to U.S.S.G. § 3D1.2(d). Therefore, pursuant to U.S.S.G. § 3D1.3(b), the applicable offense level is **20**, the highest offense level of the counts in the group.

c.        This Office does not expect to oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office may also make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit a factual basis for his guilty plea; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of the guilty plea and the date of sentencing; or (vii) attempts to withdraw the plea of guilty.

## Forfeiture

7.        This Office will request that the Court, upon acceptance of the Defendant's guilty plea, enter an Order of Forfeiture as part of the Defendant's sentence, to include, but not limited to: (1) a Polymer80 9mm semi-automatic handgun, equipped with a full-automatic switch; and (2) approximately 30 rounds of PMC 9mm ammunition contained in the Polymer80 9mm semi-automatic handgun, all seized during a traffic stop in Suitland, Maryland on March 13, 2023.

## Factual Allegations

8.        The Defendant has submitted facts to the Court to which he will admit at the Rule 11 hearing. This Office believes that those facts establish that the elements of the charged crimes have been met. For additional consideration, this Office notes that on January 9, 2024, United States District Judge Peter J. Messitte held a hearing on the Defendant's motion to suppress evidence (ECF No. 18). ECF No. 33. Judge Messitte denied the motion for the reasons stated on the record during the hearing. ECF No. 38. In Judge Messitte's order denying the Defendant's motion, the Court found the following facts based on the evidence presented at the hearing:

> On March 13, 2023, officers on duty for the Prince George's County Police Department ("PGPD") observed a white Chevrolet Equinox SUV, with a rear D.C. license plate, leaving the Parkview Apartment Complex in Suitland, Maryland. ECF No. 67, at 124, lines 6-10. Officers noticed the vehicle had dark window tinting and did not display a front license plate. *Id.*, lines 10-11. An officer followed behind the SUV as it turned right from Parkway Terrace Drive onto Silver Hill Road without fully stopping at the stop sign or signaling its turn. *Id.*, lines 14-18.

Another officer activated his cruiser's emergency lights to conduct a traffic stop. *Id.*, lines 21-23.

      As an officer approached the SUV, the driver rolled down the car's windows. *Id.* at 124, lines 24-25; 125, line 1. The officer observed the driver ("Individual 1"); the front seat passenger who was later identified as the Defendant, **TRISTYN TUTT**; and a rear seat passenger ("Individual 2"). *Id.* at 124, lines 24-25; 125, lines 1-2, 9-10. The officer also detected the odor of marijuana emanating from the car. *Id.* at 125, lines 2-3. The officer directed Individual 1 to get out of the car. *Id.*, lines 3-4.

During the hearing, Judge Messitte also watched footage from several of the responding officers' body-worn cameras and listened to a responding officer's testimony which showed that:

      As Individual 1 exited the car, another officer spoke through the rear passenger window and asked **TUTT** and Individual 2 if there were any weapons in the car. *Id.* at 125 lines 4-5; 77, lines 17-20; 78, lines 11-13. Another officer opened **TUTT**'s door and asked him to exit the car. *Id.* at 125, line 6; 75, at lines 21-23. At that point, **TUTT** told the officer that "I do got a gun on me." *Id.* at 26, lines 16-25; 27, line 1; 125 lines 6-7. Hearing that **TUTT** had a weapon, the officers handcuffed all three men. *Id.*, line 8. One officer then pulled **TUTT**'s sweatshirt up and discovered a firearm in his waistband. *Id.* at 27, lines 11-12.

Ex. 1 (ECF No. 67).

      Additionally, had the Defendant not elected to plead guilty, this Office would have proven the following facts beyond a reasonable doubt had this matter proceeded to trial:

      **TUTT** knowingly possessed the loaded Polymer80 9mm semi-automatic handgun, equipped with a full-automatic switch, on March 13, 2023. **TUTT** also knew the characteristics of the Polymer80 handgun with the full-automatic switch, namely that the firearm was modified to automatically shoot more than one shot without manual reloading with a single function of the trigger, making it a machinegun, under the federal definition.

      **TUTT** also knowingly possessed the ammunition contained inside the extended magazine attached to the Polymer80 9mm semi-automatic handgun on March 13, 2023. Prior to possessing the ammunition on March 13, 2023, **TUTT** had been convicted of—and knew he had been convicted of—a crime punishable by imprisonment for a term exceeding one year, for purposes of 18 U.S.C. § 922(g)(1). He therefore was prohibited from possessing ammunition.

      The 30 rounds of recovered ammunition were manufactured outside of Maryland before **TUTT** possessed them in Maryland on March 13, 2023, and therefore traveled in interstate commerce.

<u>No Agreement</u>

9.      Given that the parties have not entered into any plea agreement, there are no agreements, promises, undertakings, or understandings between the Defendant and this Office with respect to the Guidelines calculation, the Defendant's criminal history, the sentence to be recommended, or any other issues related to sentencing.

Very truly yours,

Kelly O. Hayes
United States Attorney

_____/s/_____
Brittany Appleby-Rumon
Special Assistant United States Attorney

Elizabeth Wright
Assistant United States Attorney

cc: Ellie Marranzini, Esq.
    Eric Pilch, Esq.